## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NORMA CONNALLY, | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | **CIVIL ACTION NO.** |
| | § | |
| JO ANNE B. BARNHART, | § | **SA-05-CA-0302 RF (NN)** |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   **W. Royal Furgeson**
      **United States District Judge**

### I. Introduction

Plaintiff Norma Connally seeks review and reversal of the administrative denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") by the Administrative Law Judge ("ALJ") on July 30, 2004.[1]  Plaintiff contends that ALJ Jonathan P. Blucher's conclusion, that plaintiff retained the residual functional capacity ("RFC") to perform work available in the local and national economies, is not supported by substantial evidence of the record.  Specifically, plaintiff contends that the ALJ failed to properly weigh the evidence substantiating her depression, improperly determined that her depression was not severe, and improperly found that plaintiff's claims of disability were not credible.  For these reasons, plaintiff requests that the court reverse, remand and order the entry of a finding of

---

[1] Docket Entries 3, 18, 25, 27.  **See also** Administrative Transcript ("Transcript") at 20-31.

disability, or, in the alternative, remand the case for proper development.

After considering plaintiff's brief in support of her complaint,[2] defendant's brief in support of the Commissioner's decision,[3] plaintiff's reply brief,[4] defendant's response to plaintiff's reply,[5] plaintiff's response to defendant's response to plaintiff's reply,[6] the transcript of the Social Security Administration ("SSA") proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, it is my recommendation that plaintiff's request for relief be **DENIED**.

I have jurisdiction to enter this Memorandum and Recommendation under 28 U.S.C. § 636(b) and the District Court's Order referring all pretrial matters in this proceeding to me for disposition by order, or to aid in their disposition by recommendation where my authority as a Magistrate Judge is statutorily constrained.

## II. **Jurisdiction**

The District Court has jurisdiction to review the final decision of the Commissioner of Social Security as provided by 42 U.S.C. §§ 405(g), 1383.

## III. **Administrative Proceedings**

---

[2] Docket Entry 18.  Plaintiff filed her initial brief in support of her complaint on August 22, 2005.  Docket Entry 12.  After defendant filed a corrected transcript on October 19, 2005, Docket Entry 16, plaintiff filed her amended brief on November 28, 2005.

[3] Docket Entry 22.

[4] Docket Entry 25.

[5] Docket Entry 26.

[6] Docket Entry 27.

Based on the record in this case, plaintiff fully exhausted her administrative remedies prior to filing this action in federal court.  Plaintiff protectively filed for benefits on January 4, 2000,[7] and filed DIB and SSI applications on January 31, 2000, alleging disability beginning February 5, 1998.[8]  The Commissioner initially denied the applications on April 18, 2000,[9] and denied her request for reconsideration on May 23, 2000.[10]

Plaintiff requested a hearing before an ALJ,[11] and ALJ Blucher held an initial hearing on January 23, 2001, in San Antonio, Texas.[12]  Jim Shepard represented plaintiff at the hearing.[13]  At the administrative hearing, ALJ Blucher heard testimony from plaintiff and medical expert ("ME") Dr. Homer Goehrs.[14]  Vocational expert ("VE") Anita Perry appeared at the hearing, but she did not testify.[15]

After hearing plaintiff's testimony and argument by her representative, and in light of the medical record, the ALJ concluded that the plaintiff should be examined by an orthopedist and a

---

[7] Transcript at 118.

[8] Transcript at 119-121, 814-816.  Plaintiff filed a prior application April 18, 1997, that was resolved by ALJ Morrison, **see** Transcript at 818, 912, and a subsequent application on September 6, 2001.  **See** Transcript at 112, 912.  The Appeals Council directed the ALJ to associate the January 2000 and September 2001 claim files and issue a decision on the associated claims.  **Id.**

[9] Transcript at 35-40, 820-825.

[10] Transcript at 43-45, 827-828.

[11] Transcript at 47.

[12] Transcript at 51, 830, 853.

[13] Transcript at 856.

[14] Transcript at 853-881.

[15] Transcript at 853.

psychiatrist to provide a complete record upon which to make a disability determination.[16]  Upon the ALJ's request, Manish V. Patel, M.D., performed a complete orthopedic evaluation of plaintiff on March 9, 2001,[17] and Robin E. Hostetter, M.D., performed a psychiatric evaluation of plaintiff on February 15, 2001.[18]

ALJ Blucher conducted a supplemental hearing on May 9, 2001.[19]  Jim Shepard represented plaintiff.  Plaintiff and VE Howard Martin testified at the supplemental hearing.[20]

On July 30, 2004, ALJ Blucher issued his decision in which he concluded that plaintiff was not under a "disability," as defined by the Social Security Act ("the Act"), at any time through the date of the decision.[21]  Specifically, ALJ Blucher found that although plaintiff's impairments did not allow her to perform her past relevant work as a cafeteria worker, she retained the RFC to perform a significant range of medium work and could perform jobs including hand packer at the sedentary level, hand packer at the light level, and industrial gate guard.[22]

After receiving the ALJ's unfavorable decision, plaintiff subsequently appointed Lanny D. Perdue as her representative and requested review of the hearing decision.[23]  On August 8,

---

[16] Transcript at 887.

[17] Transcript at 412-417.

[18] Transcript at 404-411.

[19] Transcript at 884.

[20] Transcript at 884.

[21] Transcript at 837-845.

[22] Transcript at 843, 844,  ¶¶ 12 and 13 at 845.

[23] Transcript at 834-836, 92, 113-117.

4

2003, the Appeals Council vacated the hearing decision and remanded the case to the ALJ.[24]  The Appeals Council instructed the ALJ to (1) give consideration to the opinion of Dr. Donna Boehme, plaintiff's treating physician, and explain the weight given to the opinion evidence, and (2) further evaluate plaintiff's mental impairment providing specific findings and the appropriate rationale for each of the functional areas described in 20 C.F.R. §§ 404.152a(c) and 416.920a(c).[25]

On December 10, 2003, ALJ Blucher conducted a third administrative hearing.  Pat Reeves represented plaintiff.  The ALJ heard testimony from plaintiff and VE Judith Harper. [26]

Plaintiff, who was forty-six (46) years of age at the December 2003 hearing, provided the following testimony over the course of the three hearings.  At the initial hearing, plaintiff was not married and lived with her adult son, her daughter, and her son's five (5) year-old daughter in a duplex.[27]  By 2003, she was living in a house with her daughter who was disabled and received disability benefits for scoliosis and depression.[28]

When asked about her education level, plaintiff testified that she was a high school graduate and had cashier training.[29]  She explained that she could read English, but had difficulty writing, in part because of her physical impairment and in part because of her inability to spell

---

[24] Transcript at 111-112.

[25] **Id.**

[26] Transcript at 909.

[27] Transcript at 859, 862.

[28] Transcript at 918.

[29] Transcript at 858, 888.  At the third hearing, plaintiff did not correct the ALJ when he suggested that she had a GED.  Transcript at 915 and 916.  In his 2004 decision, the ALJ found that plaintiff had a high school education, Transcript at 21, and had a GED.  Transcript at ¶ 9 at 31.

certain larger words.[30]

Prior to filing for benefits, plaintiff worked in the food service department for the San Antonio Independent School District.[31]  Plaintiff washed dishes, mopped the floor, cleaned tables, and assisted with the food preparation.[32]  She also put away groceries in the pantry and cleaned the refrigerators.[33]  Plaintiff also worked in a restaurant.[34]

When asked about her impairments, plaintiff complained that she had problems with her right hand, arm, and shoulder.[35]  She had surgery on her wrist and elbow in February 2000, but denied any improvement.  Plaintiff stated that she had difficulty reaching above her head, and could not straighten her right arm.[36]  She also complained of carpal tunnel syndrome in her left hand and back pain.[37]

Plaintiff explained that she also suffered from severe depression.  She testified that she was taking medication for depression, but the medication was not helping.  The depression affected her appetite so that she only ate approximately three times per week resulting in weight loss.[38]  Plaintiff was unable to obtain treatment for depression because the insurance company

---

[30] Transcript at 915-916, 858.

[31] Transcript at 888.

[32] Transcript at 889, 934-935.

[33] Transcript at 890.

[34] Transcript at 921, 937.

[35] Transcript at 863.

[36] Transcript at 866, 867.

[37] Transcript at 864-866, 870, 924.

[38] Transcript at 931-932.

would not pay for treatment, and she did not have funds to pay for treatment.[39]

Plaintiff described her daily activities as reading the Bible and watching television.[40]  She also attended church.  Plaintiff testified that she did not do any cooking, did not wash dishes, and did not do laundry.  She tried to sweep with her left hand, but had difficulty doing so because of the pain.  Plaintiff stated that she did not go to movies or restaurants, and does not socialize with friends.[41]

VE Harper testified at the December 2003 hearing.  She divided plaintiff's past relevant work at the school cafeteria as kitchen helper at the medium, unskilled level and cashier at the light, unskilled level.  She also described plaintiff's restaurant work as a counter helper as light, semi-skilled.[42]

ALJ Blucher propounded a hypothetical individual of plaintiff's age, education, and work history, capable of performing medium work and occasional bending and stooping.  The ALJ included limitations of no climbing, no balancing, no intense concentration, no high stress, no hazardous or vibrating machinery, and no complex instructions.  He also limited fine manipulation to occasional with no limitation on gross manipulation.  The ALJ also provided that the individual would have the ability maintain reasonable contact with others.[43]

VE Harper opined that such an individual would be able to perform plaintiff's past

---

[39] Transcript at 924, 927-928.

[40] Transcript at 863, 923.

[41] Transcript at 924, 932.

[42] Transcript at 935.

[43] Transcript at 937.

relevant work.  She further opined that the hypothetical individual could work as a laundry worker at the light, unskilled, entry level; a stock checker in apparel at the light, unskilled, entry level; and light office housekeeping.[44]

On July 30, 2004, ALJ Blucher issued his decision in which he concluded that plaintiff was not under a "disability," as defined by the Social Security Act ("the Act"), at any time through the date of the decision.[45]  After receiving notice of the ALJ's unfavorable decision, plaintiff requested review of the hearing and decision.[46]  On April 1, 2005, the Appeals Council concluded that there was no reason under its rules to review the ALJ's decision, and denied plaintiff's request for review.[47]  Plaintiff commenced the instant action in this court on April 25, 2005.[48]

## IV.  Issue Presented

Is the ALJ's decision that plaintiff was not under a "disability," as defined by the Act, at any time through the date of the decision, supported by substantial evidence and does the decision comport with relevant legal standards?

## V.  Analysis

### A. Standard of Review

---

[44] Transcript at 938.

[45] Transcript at 20-31.

[46] Transcript at 17 and 16, respectively.

[47] Transcript at 8.

[48]  Plaintiff submitted her complaint along with a motion to proceed *in forma pauperis* on April 13, 2005, Docket Entry 1, which was granted by Order entered on April 25, 2005.  Docket Entry 2.  The Clerk of Court filed the original complaint on April 25, 2005.  Docket Entry 3.

In reviewing the Commissioner's decision denying disability insurance benefits, the reviewing court is limited to a determination of whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[49]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[50] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[51]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[52]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[53]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[54]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age,

---

[49] **Martinez v. Chater**, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[50] **Villa v. Sullivan**, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting **Hames v. Heckler**, 707 F.2d 162, 164 (5th Cir. 1983)).

[51] **Abshire v. Bowen,** 848 F.2d 638, 640 (5th Cir. 1988) (quoting **Hames**, 707 F.2d at 164).

[52] **Martinez**, 64 F.3d at 173.

[53] **Ripley v. Chater**, 67 F.3d 552, 555 (5th Cir. 1995); **see also** **Villa**, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[54] **Martinez**, 64 F.3d at 174.

9

education and work experience.[55]

### 1. Entitlement to Benefits

Every individual who is insured for disability insurance benefits, has not reached retirement age, has filed an application for benefits, and is under a disability is entitled to receive disability insurance benefits.[56]  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[57]  A claimant shall be determined to be disabled only if his or her physical or mental impairment or impairments are so severe that he or she is unable to not only do his or her previous work, but cannot, considering his or her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work.[58]

### 2. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[59]  A finding that a claimant is disabled or not disabled

---

[55] **Id.**

[56]  42 U.S.C. § 423(a)(1).

[57] 42 U.S.C. § 1382c(a)(3)(A).

[58] 42 U.S.C. § 1382c(a)(3)(B).

[59] 20 C.F.R. §§ 404.1520 and 416.920.

10

at any point in the process is conclusive and terminates the Commissioner's analysis.[60]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[61]  If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[62]  The second step involves determining whether the claimant's impairment is severe.[63]  If it is not severe, the claimant is deemed not disabled.[64]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[65]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering his or her age, education, or work experience.[66]  If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's RFC and the demands of his or her past work.[67]  If the claimant is still able to do his or her past work, the claimant is not disabled.[68]  If the claimant cannot perform his or her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his or her residual capacities, age, education, and work experience, to do other work.[69]  If the claimant

---

[60] **Leggett v. Chater**, 67 F.3d 558, 564 (5th Cir. 1995).

[61] 20 C.F.R. §§ 404.1520 and 416.920.

[62] **Id.**

[63] **Id.**

[64] **Id.**

[65] **Id.**

[66] **Id.**

[67] **Id.**

[68] **Id.**

[69] **Id.**

cannot do other work, he or she will be found disabled.  The claimant bears the burden of proof

at the first four steps of the sequential analysis.[70]  Once the claimant has shown that he or she is

unable to perform his or her previous work, the burden shifts to the Commissioner to show that

there is other substantial gainful employment available that the claimant is not only physically

able to perform, but also, taking into account her exertional and nonexertional limitations, able to

maintain for a significant period of time.[71]  If the Commissioner adequately points to potential

alternative employment, the burden shifts back to the claimant to prove that he or she is unable to

perform the alternative work.[72]

## B. Findings and Conclusions of the ALJ

In the instant case, ALJ Blucher reached his decision at step four of the evaluation

process.  At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity

since the alleged onset date of her disability.[73]  The ALJ then concluded at steps two and three

that plaintiff had an impairment or combination of impairments (carpal tunnel syndrome and

disorders of the back) which were severe and depression which was not severe,[74] but did not meet

or medically equal a listed impairment in Appendix 1, Subpart P, Regulation No. 4.[75]  At step

four, the ALJ found that plaintiff could perform her past relevant work as a cafeteria worker at

---

[70] **Leggett**, 67 F.3d at 564.

[71] **Watson  v. Barnhart**, 288 F.3d 212, 217 (5th Cir. 2002).

[72] **Anderson v. Sullivan**, 887 F.2d 630, 632-33 (5th Cir. 1989).

[73] Transcript at 21, ¶ 2 at 30.

[74] Transcript at 25, ¶ 3 at 30.

[75] Transcript at 26, ¶ 3 at 30; **see also** 20 C.F.R. Pt.  404, Subpt. P, App. 1 (containing the list of impairments).

the medium, unskilled level.[76]  Although the ALJ found plaintiff not disabled at step four, he proceeded to step five, where the ALJ held that given plaintiff's age, education, past work experience, and residual functional capacity to do a full range of medium work, plaintiff could perform work as a laundry worker, a stocker checker, and a housekeeper.[77]  Based on the foregoing, ALJ Blucher concluded that plaintiff was not under a disability through date of the decision.[78]

**C. Plaintiff's Allegations of Error**

Plaintiff claims that the ALJ erred in determining that plaintiff was not under a disability as defined by the Act through the date of the decision.  In particular, plaintiff contends that the ALJ erred (1) by failing to give proper weight to the examining psychiatrist's consultative evaluation of plaintiff, resulting in the ALJ assigning an erroneous RFC to plaintiff, (2) in finding that plaintiff's depression was not a severe impairment, and (3) concluding that plaintiff was not credible and a malingerer.

**1. Did the ALJ properly weigh Dr. Hostetter's consultative psychiatric evaluation in determining that plaintiff's depression did not constitute a severe impairment?**

Plaintiff's first two assignments of error involve the ALJ's determination that plaintiff's depression did not constitute a severe impairment, and thereby, severely restrict plaintiff's ability to perform substantial gainful activity.  Plaintiff contends that the ALJ consistently ignored evidence of plaintiff's nonexertional mental impairments and failed to properly evaluate the results of plaintiff's consultative psychiatric examination in determining her RFC.

---

[76] Transcript at 29, ¶ 6 at 31.

[77] Transcript at 30, ¶ 11 at 31.

[78] Transcript at 30, ¶ 12 at 31.

When the ALJ assesses the oral and written evidence provided by various medical professionals, a treating physician's opinion is entitled to more weight than the opinion of a consulting physician who has never examined the claimant or has only examined the claimant once.[79]  However, the ALJ may freely "reject the opinion of any physician when the evidence supports a contrary conclusion,"[80] provided the ALJ has good cause for so doing.[81]

> [W]hen good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony.  The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence.[82]

The ALJ must evaluate every medical opinion received,[83] and may not pick and choose from the record only the evidence which supports his or her position,[84] nor reject a medical opinion without giving an explanation for doing so.[85]  In evaluating medical evidence, the ALJ must look at the claimant's relationship to the physician, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the relevant evidence used by the physician to support his or her opinion, the consistency between the opinion

---

[79] **Bowman v. Heckler**, 706 F.2d 564, 567 n.3 (5th Cir. 1983) (citing **Oldham v. Schweiker**, 660 F.2d 1078, 1084 (5th Cir.1981); **Warncke v. Harris**, 619 F.2d 412, 416 (5th Cir.1980); **Strickland v. Harris**, 615 F.2d 1103, 1109-1110 (5th Cir.1980); **Smith v. Schweiker**, 646 F.2d 1075, 1081 (5th Cir.1981); **Williams v. Finch**, 440 F.2d 613, 616-17 and n. 6 (5th Cir.1971)).

[80] **Oldham**, 660 F.2d at 1084.

[81] **Greenspan v. Shalala**, 38 F.3d 232, 237 (5th Cir. 1994).

[82] **Greenspan**, 38 F.3d at 237 (citing **Scott v. Heckler**, 770 F.2d 482, 485 (5th Cir. 1985)).

[83] 20 C.F.R. §§ 404.1527(d), 416.927(d).

[84] **Loza v. Apfel**, 219 F.3d 378, 394 (5th Cir. 2000).

[85] **Id.** at 395.

14

and the record as a whole, and area of specialization of the physician providing the opinion.[86]

In this case, ALJ Blucher adequately explained his treatment of Dr. Hostetter's opinion. The ALJ noted that plaintiff saw Dr. Robin Hostetter on February 15, 2001, for a psychiatric evaluation.[87]  Plaintiff complained to Dr. Hostetter of depression and pain.  She was moderately depressed, cried during the examination, and her overall affect was restricted to sad.  However, Dr. Hostetter found her stream of mental activity to be normal, her sensorium clear, she was oriented, and her memory was intact with some difficulty concentrating.  The ALJ specifically noted that Dr. Hostetter found her problems with concentration "remarkable" and that her insight, judgment, and intellectual function were impaired.

The ALJ then discussed Dr. Hostetter's opinion in light of the record as a whole.  The ALJ explained that he found Dr. Hostetter's diagnoses of adhedonia contrary to the daily living activities that plaintiff had provided in her report.  He also noted that claimant reported to Dr. Hostetter that she was able to care for her daughter and her portion of the duplex.  The ALJ found that these activities demonstrated that plaintiff had the ability to care for herself and others along with the ability to make decisions and follow through with tasks.  The ALJ also found significant that Dr. Hostetter found that plaintiff maintained a fair ability to perform detailed and simple job instructions.[88]

The ALJ discussed in detail the extent to which he found that plaintiff's depression

---

[86] 20 C.F.R. §§  404.1527(d), 416.927(d).

[87] Transcript at 25.

[88] **Id.**

15

impaired her ability to function in the workplace.[89]  The ALJ found that plaintiff's ability to take

care of her personal needs and household chores demonstrated that her depression only mildly

affected her daily activities.  He also found that the record supported a finding that plaintiff had

mild deficiencies in concentration, persistence, and pace.[90]  Furthermore, the ALJ noted that the

evidence in the record contained substantial evidence that plaintiff exaggerated her condition.[91]

Finally, the ALJ assigned the nonexertional limitations to plaintiff that he found were

supported by the record.  The ALJ found that plaintiff was limited by her mental impairments to

work which did not require intense concentration, high stress, complex instructions, and only

required "reasonable contact with others."

Accordingly, the ALJ did not pick and choose only those portions of Dr. Hostetter's

report that supported his determination that plaintiff's depression was not a severe impairment.

Rather, he discussed Dr. Hostetter's findings in detail and explained why he felt that some the

doctor's findings were contradicted by other evidence in the record.  Therefore, the ALJ

appropriately explained his reasons for determining that plaintiff did not suffer from severe

depression, and his decision is based on substantial evidence.  Consequently, plaintiff's first two

assignments of error lack merit.

### 2. Did the ALJ err in finding that plaintiff was not credible?

Plaintiff argues that the ALJ mischaracterized plaintiff's symptom magnification as

malingering, and thereby, inappropriately found that plaintiff was not a credible witness.

---

[89] Transcript at 26.

[90] Transcript at 26.

[91] Transcript at 29 (citing reports by Dr. Kennedy, Dr. Gordon, Dr. Patel, Dr. Willhoite, and Dr. Sanders).

It is well within the authority of the ALJ to access the credibility of expert witnesses, as well as lay persons and weigh their opinions and testimony.[92]  Social Security Ruling 96-7p clarifies the procedure to be used in assessing the credibility of a Social Security claimant's statements about symptoms and pain.[93]  The Ruling requires the ALJ to engage in a two-step process.  In the first step,

> the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms.[94]

If an underlying physical or mental impairment that could reasonably be expected to produce the individual's pain has been established, the adjudicator

> must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.[95]

When the adjudicator needs additional information to assess the plaintiff's credibility, she should assess the following kinds of factors:

1.  The individual's daily activities;
2.  The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3.  Factors that precipitate and aggravate the symptoms;
4.  The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5.  Treatment, other than medication, the individual receives or has received

---

[92] **Moore v. Sullivan**, 919 F.2d 901, 905 (5th Cir.1990).

[93] **Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims – Assessing the Credibility of an Individual's Statements**, SSR 96-7p, 1996 WL 374186 at *1.  **See also**, 20 C.F.R. §§ 404.1529(c), 416.929(c).

[94] **Id.** at *2.

[95] **Id.**

for relief of pain or other symptoms;

6.    Any measures other than treatment the individual uses or has used to
      relieve pain or other symptoms (e.g., lying flat on his or her back, standing
      for 15 to 20 minutes every hour, or sleeping on a board); and

7.    Any other factors concerning the individual's functional limitations and
      restrictions due to pain or other symptoms.[96]

In this case, ALJ Blucher substantially complied with the procedure to determine the

credibility of plaintiff's allegations of impairment.  He thoroughly examined the record to

identify plaintiff's underlying medical condition.  He recognized her back disorder, carpal tunnel

syndrome, and her impairments in her upper arm.  The ALJ considered plaintiff's activities and

the medical records concerning her abilities and the effort she put forth in the RFC assessments.

Importantly, the ALJ pointed to specific evidence in the medical record where examining

physicians found that plaintiff's complaints exceeded the amount of pain that could be

reasonably expected from her medically identifiable impairments.[97]  The physicians attributed

plaintiff's complaints to exaggeration and symptom magnification.  After considering this

evidence, the ALJ explained

> [i]t should be noted that multiple doctors have come to this
> conclusion.  Many of the conclusions of exaggeration specifically
> concern claimant's upper extremities.  This unusual massive
> finding outweighs Dr. Boehme's conclusion that claimant is
> disabled. [98]

As explained above, credibility assessments are for the Commissioner and not for the

courts to resolve.[99]  ALJ Blucher substantially followed the procedure propounded by the

---

[96] **Id.** at *3.

[97] Transcript at 29.

[98] **Id.**

[99] **Martinez**, 64 F.3d at 174.

Commission for determining credibility, and his determination is supported by substantial evidence.[100]  Consequently, plaintiff's final point of error is without merit.

## VI.  Recommendation

Based on the foregoing, I recommend that plaintiff's request for relief be **DENIED**, her complaint (Docket Entry 3) **DISMISSED**, and the decision of the Commissioner **AFFIRMED**.

## VII. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Memorandum and Recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the District Court.[101]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.**  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in

---

[100] While plaintiff takes offense to the term "malinger" being used in reference to plaintiff's allegations of impairment, the ALJ's use of the term does not alter the Court's determination that the ALJ did not commit reversible error in determining that plaintiff's allegations of disabling impairment were not credible and that plaintiff was not a credible witness.

[101] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

this report shall bar the party from a *de novo* determination by the District Court.[102]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[103]

      **SIGNED** on August 24, 2006.

*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[102] **Thomas v. Arn**, 474 U.S. 140, 149-152 (1985); **Acuña v. Brown & Root, Inc.**, 200 F.3d 335, 340 (5th Cir. 2000).

[103] **Douglass v. United Servs. Auto. Ass'n**, 79 F.3d 1415, 1428-29 (5th Cir. 1996).